http://www.va.gov/vetapp16/Files4/1634349.txt

Citation Nr: 1634349 
Decision Date: 08/31/16 Archive Date: 09/06/16

DOCKET NO. 11-18 470A ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in St. Petersburg, Florida

THE ISSUE

Entitlement to a rating in excess of 50 percent for posttraumatic stress disorder (PTSD).

REPRESENTATION

Appellant represented by: Leo D. Dougherty, Agent

ATTORNEY FOR THE BOARD

C. Jones, Associate Counsel

INTRODUCTION

The Veteran served on active duty from July 1966 to April 1969, to include service in Vietnam. His decorations include the Combat Action Ribbon.

This matter comes before the Board of Veterans' Appeals (Board) on appeal from a December 2010 rating decision by the Department of Veterans Affairs (VA) Regional Office (RO) in St. Petersburg, Florida, which denied entitlement to a rating in excess of 50 percent for PTSD. 

In May 2010, the Veteran testified before a hearing officer at the RO. A transcript of the hearing has been reviewed and associated with the claims file. 

This matter was before the Board in April 2014 where it was remanded for further evidentiary development. Thereafter, in a September 2015 rating decision, the Board denied entitlement to an increased rating for PTSD.

In May 2016, pursuant to a Joint Motion for Remand (JMR) filed by the Veteran and the Secretary of Veterans Affairs (Secretary), the United States Court of Appeals for Veterans Claims (Court) vacated the Board's September 2015 denial of entitlement to an increased rating for PTSD and remanded the matter to the Board.

The Board observes that the issues of entitlement to an extraschedular rating for PTSD and entitlement to a total disability rating based upon unemployability (TDIU) were remanded in the September 2015 Board decision. However, the requested development has not been completed. Thus, the issues will be adjudicated in a separate decision at a later time. 

The Board notes a June 2016 correspondence from the Veteran's representative appears to have raised the issue of entitlement to an earlier effective date for PTSD. It is unclear where this is with the rating or the grant of service connection. The Veteran and his representative is advised that this statement does not meet the standards of an intent to file (3.155(b)) or those of a complete claim under 38 C.F.R. § 3.155(a). The AOJ should notify the Veteran as to the procedures required under 38 C.F.R. § 3.155 for filing a claim for VA benefits. 

The Board notes that in a January 2016 rating decision, the RO confirmed and continued the previous denial of service connection for ischemic heart disease. Thereafter, in February 2016, the Veteran filed a timely notice of disagreement (NOD). A statement of the case (SOC) has not been issued with regard to the claim. Generally, the filing of an NOD confers jurisdiction on the Board and the next step is for the Agency of Original Jurisdiction to issue an SOC. See Manlincon v. West, 12 Vet. App. 238 (1999). However, in correspondence dated in June 2016, the RO acknowledged receipt of the NOD. As it appears that the RO is still taking action on these issues, the Board will not exercise formal jurisdiction over them at this time.

FINDING OF FACT

The Veteran's PTSD has been manifested by occupational and social impairment with reduced reliability and productivity.

CONCLUSION OF LAW

The criteria for a rating in excess of 50 percent for PTSD have not been met. 
38 U.S.C.A. §§ 1155, 5107 (West 2014); 38 C.F.R. §§ 3.344, 4.1, 4.3, 4.7, 4.10, 4.21, 4.126, 4.130, Diagnostic Code 9411 (2015).

REASONS AND BASES FOR FINDING AND CONCLUSION

Veterans Claims Assistance Act of 2000 (VCAA)

As provided for by the VCAA, VA has a duty to notify and assist veterans in substantiating a claim for VA benefits. 38 U.S.C.A. §§ 5100, 5102, 5103, 5103A, 5107, 5126 (West 2014); 38 C.F.R. §§ 3.102, 3.156(a), 3.159 and 3.326(a) (2015). 

VA notice was provided via letter dated in January 2009, which fully addressed all notice elements. See Dingess/Hartman. v. Nicholson, 19 Vet. App. 473 (2006).

Next, VA has a duty to assist the Veteran in the development of the claim. This duty includes assisting him in the procurement of service treatment records and pertinent treatment records and providing an examination when necessary. 
38 U.S.C.A. § 5103A; 38 C.F.R. § 3.159.

Service treatment records are associated with claims file. All identified post-service treatment records and Social Security Administration (SSA) records have been obtained. The Veteran has not sufficiently identified any additional records that should be obtained prior to a Board decision. Therefore, VA's duty to further assist the Veteran in locating additional records has been satisfied. 

The Veteran was afforded VA examinations in October 2009, July 2010, November 2014, and April 2016. The examinations are adequate for the purposes of the matter adjudicated herein, as they were based on consideration of the Veteran's pertinent medical history and described the current severity of the Veteran's disability. See Barr v. Nicholson, 21 Vet. App. 303, 311 (2007).

Overall, there is no evidence of any VA error in notifying or assisting the Veteran that reasonably affects the fairness of this adjudication.

Legal Criteria

Disability evaluations are determined by comparing a Veteran's present symptomatology with criteria set forth in VA's Schedule for Rating Disabilities (Rating Schedule), which is based on average impairment in earning capacity. 38 U.S.C.A. § 1155; 38 C.F.R. Part 4. 

If two disability evaluations are potentially applicable, the higher evaluation will be assigned if the disability picture more nearly approximates criteria for that rating; otherwise, the lower rating will be assigned. 38 C.F.R. § 4.7. All reasonable doubt as to the degree of disability is resolved in favor of the claimant. 38 U.S.C.A. § 5107(b); 38 C.F.R. § 4.3.

In considering the severity of a disability, it is essential to trace the medical history of the Veteran. 38 C.F.R. §§ 4.1, 4.2, 4.41 (2015). Consideration of the whole-recorded history is necessary so that a rating may accurately reflect the elements of disability present. 38 C.F.R. § 4.2 (2015); Peyton v. Derwinski, 1 Vet. App. 282 (1991). While the Veteran's entire history is reviewed when assigning a disability rating, 38 C.F.R. § 4.1, where service connection has already been established and an increase in the disability rating is at issue, it is the present level of disability that is of primary concern. Francisco v. Brown, 7 Vet. App. 55 (1994). 

Further, the Board must evaluate the medical evidence of record since the filing of the claim for increased rating and consider the appropriateness of a "staged rating" (i.e., assignment of different rating for distinct periods of time, based on the facts). See Hart v. Mansfield, 21 Vet. App. 505 (2007).

In determining the severity of a disability, the Board is required to consider the potential application of various other provisions of the regulations governing VA benefits, whether or not they were raised by the Veteran. 38 C.F.R. §§ 4.1, 4.2; Schafrath v. Derwinski, 1 Vet. App. 589, 595 (1991).

When all the evidence is assembled, VA is responsible for determining whether the evidence supports the claim or is in relative equipoise, with the appellant prevailing in either event, or whether a preponderance of the evidence is against a claim, in which case, the claim is denied. Gilbert v. Derwinski, 1 Vet. App. 49 (1990).

The Veteran's service-connected PTSD has been rated under Diagnostic Code 9411.

Under the General Rating Formula, a 50 percent rating is assigned when the evidence shows occupational and social impairment with reduced reliability and productivity due to such symptoms as: flattened affect; circumstantial, circumlocutory, or stereotyped speech; panic attacks more than once a week; difficulty in understanding complex commands; impairment of short- and long-term memory (e.g., retention of only highly learned material, forgetting to complete tasks); impaired judgment; impaired abstract thinking; disturbances of motivation and mood; and difficulty in establishing and maintaining effective work and social relationships. 38 C.F.R. § 4.130, Diagnostic Code 9411.

A 70 percent disability rating applies when occupational and social impairment reflects deficiencies in most areas, such as work, school, family relations, judgment, thinking, or mood, due to such symptoms as: suicidal ideation; obsessional rituals which interfere with routine activities; speech intermittently illogical, obscure, or irrelevant; near continuous panic or depression affecting the ability to function independently, appropriately, and effectively; impaired impulse control; spatial disorientation; neglect of personal appearance and hygiene; difficulty in adapting to stressful circumstances; or an inability to establish and maintain effective relationships. Id.

A 100 percent disability rating is assigned when there is total occupational and social impairment, due to such symptoms as gross impairment in thought processes or communication; persistent delusions or hallucinations; grossly inappropriate behavior; persistent danger of hurting self or others; intermittent inability to perform activities of daily living (including maintenance of minimal personal hygiene); disorientation to time or place; and memory loss for names of close relatives, own occupation, or own name. Id.

The nomenclature employed in the rating schedule is based upon the Diagnostic and Statistical Manual of Mental Disorders, Fourth Edition, of the American Psychiatric Association (also known as "the DSM-IV"). 38 C.F.R. § 4.130 (2015). The DSM-IV contains a Global Assessment of Functioning (GAF) scale, with scores ranging between zero and 100 percent, representing the psychological, social, and occupational functioning of an individual on a hypothetical continuum of mental health-illness. See Carpenter v. Brown, 8 Vet. App. 240, 242 (1995). 

The DSM-IV contemplates that the GAF scale will be used to gauge a person's level of functioning at the time of the evaluation (i.e., the current period) because ratings of current functioning will generally reflect the need for treatment or care. While GAF scores are probative of the Veteran's level of impairment, they are not to be viewed outside the context of the entire record. Therefore, they will not be relied upon as the sole basis for an increased disability evaluation.

The Board notes VA implemented DSM-V, effective August 4, 2014. The Secretary, VA, has determined, however, that DSM-V does not apply to claims certified to the Board prior to August 4, 2014. See 79 Fed. Reg. 45,093, 45,094 (Aug. 4, 2014). Since the Veteran's appeal was certified to the Board prior to August 4, 2014, DSM-IV is still the governing directive for his appeal.

Evaluation under § 4.130 is symptom-driven, meaning that symptomatology should be the fact-finder's primary focus when deciding entitlement to a given disability rating under that regulation. Vazquez-Claudio v. Shinseki, 713 F.3d 112, 116-17 (Fed. Cir. 2013). In Vazquez-Claudio, the United States Court of Appeals for the Federal Circuit explained that the frequency, severity and duration of the symptoms also play an important role in determining the rating. Id. at 117. Significantly, however, the list of symptoms under the rating criteria are meant to be examples of symptoms that would warrant the rating, but are not meant to be exhaustive, and the Board need not find all or even some of the symptoms to award a specific rating. See 38 C.F.R. § 4.21; Mauerhan v. Principi, 16 Vet. App. 436, 442-43 (2002). If the evidence shows that the Veteran suffers symptoms listed in the rating criteria or symptoms of similar severity, frequency, and duration, that cause occupational or social impairment equivalent to what would be caused by the symptoms listed in the criteria for a particular rating, the appropriate equivalent rating will be assigned. Id. at 443; see also Vazquez-Claudio, 713 F.3d at 117.

Factual Background

The Veteran asserts that a rating in excess of 50 percent is warranted for his service-connected PTSD. 

In a statement from the Veteran received in February 2009, he reported that he was socially and occupationally impaired to the extent that he could not be productive in in a work place, to include tasks and interaction with peers and supervisors. He also mentioned that his PTSD medication restricted his driving and ability to concentrate properly. Additionally, stress related work places exacerbated his anxiety disorder and trigged stimuli that took him back to Vietnam. 

In a subsequent statement received in April 2009, the appellant reported that he left his last job after 15 years because he could no longer handle the stress. 

In a May 2009 private medical opinion, the physician reported that the Veteran experienced chronic depressive symptoms, chronic and fairly severe anxiety with insomnia, frequent recurrent nightmares, intrusive memories, and difficulty when he is around people. The physician further stated that the appellant had been unable to work at least on a full-time basis since 1999. It was noted that the Veteran tried to work part-time for several years, but he could no longer function in any kind of work setting. His treatment included care through the VA outpatient clinic, counseling, and medication. The physician opined that the Veteran had reached maximum therapeutic intervention and still experienced fairly severe symptoms of PTSD. He determined that appellant was totally and permanently disabled and unemployable. 

VA treatment records dated from January 2009 to August 2009 reveal treatment for PTSD symptoms. Notably, in a January 2009 treatment record, it was noted that the Veteran was estranged from his adult children. He also reported a worsening of his PTSD due to the death of this father as well as watching a documentary about the Vietnam War. He indicated that he experienced more intense feelings of sadness and isolation and had poor concentration. His intrusive recollections about his own Vietnam combat experience had become more frequent, his energy level was reduced, and sleep was more problematic. Irritability was also more intensely experienced. The appellant reported that he engaged in some outside activities mainly with his significat other, although he derived little pleasure from them. With regard to functional status, the appellant's energy was within normal limits and he was appropriately dressed and fairly groomed. He appeared to be oriented, although it was not formally assessed. His psychomotor behavior was unremarkable and attention was good. The appellant's memory was intact and he was able to reconstruct the details of recent as well as remote past in an apparent accurate fashion without the benefit of notes or prompts. He admitted difficulties with concentration. Fund of knowledge was good. With regard to mood, the Veteran admitted some increase in depression and irritability. His affect was congruent with content of speech, slightly wider in range though still dysphoric. He had a normal speech rate, tone, and volume. There were no hallucinations, delusions, suicidal ideations, or homicidal ideations. Form of thought was logical and goal oriented with no evidence of formal thought disorder. It was noted that he was cooperative, had fair insight, and that his judgment was intact. There were similar findings in records dated in February 2009. In records dated in August 2009, the Veteran reported that he was "thinking about death more", but denied any thoughts of self-harm. 

The Veteran underwent a VA examination in October 2009. At that time, it was noted that he had been divorced since 1992 and reported no significant changes in his relationship with his children or grandchildren. It was noted that his father died the year prior to the examination and he continued to grieve his death. However, he stated that the two of them never had a significant relationship. He had one half-sister the he talked to on a regular basis and visited. He denied a history for suicide attempts, violence, or assaults. The examiner stated that alcohol use was likely an ongoing means of coping with PTSD symptoms. 

With regard to social relationships, the Veteran stated that he had been dating his current girlfriend for more than 2 years. He described their relationship as "okay" and indicated that there was "no passion" between them. He continued to visit and socialize with people at the Marine Corps League. He stated that in general, he got along with others, but still preferred to keep to himself. As for entertainment and leisure pursuit, the Veteran reported that he did not do anything for fun or entertainment. He mentioned that he relaxed by going for walks and sitting at home watching television. The examiner noted that the appellant had limited but fair social support. There were no significant problems with social interactions, but the Veteran continued to prefer to isolate from others. 

On physical examination, it was noted that the Veteran was clean, neatly, groomed, and casually and appropriately dressed. His speech was unremarkable and his attitude toward the examiner was cooperative, friendly, relaxed, and attentive. Affect was constricted, mood was dysphoric, and attention and orientation were intact. His thought process and content were unremarkable. He understood the outcome of his behavior and there were no delusions. The appellant had average intelligence and understood that he had a problem. He did not have sleep impairment, hallucinations, inappropriate behavior, obsessive/ritualistic behavior, panic attacks, or homicidal or suicidal thoughts. He had good impulse control and no episodes of violence. He was able to appropriately interpret proverbs. The Veteran was able to maintain minimum personal hygrine and there was no problem with activities of daily living. His remote, recent, and immediate memory were normal.

The Veteran's PTSD symptoms included recurrent and intrusive distressing recollections, intense psychological distress at exposure to internal or external cues that symbolized or resembled an aspect of the traumatic event, avoidance, markedly diminished interest or participation in significant activities, feeling of detachment or estrangement from others, difficulty falling or staying asleep, and hypervigliance. The examiner opined that the Veteran's PTSD symptoms were mild. The examiner determined that he was unable to provide a GAF score of the diagnosis of PTSD without mere speculation. He noted that post-service stressors were likely to have exacerbated his service stressor, but he was unable to differentiate the degree of exacerbation without the use of mere speculation. 

Occupationally, the examiner determined that PTSD symptoms were transient or mild and decreased work efficiency and ability to perform occupational tasks only during periods of significant stress. 

Subsequent VA treatment records dated from October 2009 to February 2010 demonstrate continued treatment for PTSD. Notably, in a record dated in October 2009, the appellant reported that his PTSD symptoms had increased slightly since his VA examination. He noted that his mood had been poorer since that time, particularly with his lack of motivation. There had also been an increase in avoidance of distressing memories. He remained generally isolated although he attended some activities at the local Marine Corps Leagues as well as softball. His energy level was unchanged and generally reduced. Sleep remained problematic and there was no change in the intensity of his irritability. Concentration was poor. A GAF score of 53 was assigned. In records dated in December 2009 and February 2010, the appellant reported that his PTSD symptoms had increased slightly in light of the anniversary or his past combat experience. He stated that his mood remained generally depressed with bouts of tearfulness. Concentration was also poor as he was more distracted by intrusive recollections of his experiences in Vietnam. He noted that he continued to remain isolated that he did attend some activities at the local Marine Corps League as well as softball. His energy level was unchanged and was generally reduced. Sleep remained problematic secondary to nightmare activity. There was no change in intensity of his irritability. There was not change in the functional status. 

In testimony provided during the May 2010 DRO hearing, the appellant's reported PTSD symptoms included: problems maintaining effective work and social relationships, disturbances of motivation and mood, impaired judgement and impaired abstract thinking; forgetfulness of completing tasks; impaired short-term and long-term memory; difficulty with complex commands; difficulty adapting to stressful circumstances; neglect of personal appearance and hygiene; unprovoked irritability; panic and depression. However, he stated that he could function independently, appropriately, and effectively. The Veteran stated that he had panic attacks 2 times per week. He stated that he had acquaintances that he saw approximately one time per week, but no close friends. He reported that he did not have a relationship with his children or his grandchildren. He denied suicidal ideation but indicated that he thought about dying. 

In records dated in June 2010, the Veteran reported that he had been more confrontational at local sporting events which escalated to the point of quitting softball. He also noted an argument with his son, more arguments in the store, and more road rage. It was noted that he had increased arousal symptoms. The physician opined that the Veteran appeared to only have limited insight into the general increase in his levels of irritability. On diagnostic impression, the physician determined that given the Veteran's history as well as behavior over the past several months, the Veteran currently experienced marked symptoms consistent with PTSD and that it had negatively impacted his ability to be gainfully employed. 

The Veteran was provided an additional VA examination in July 2010. It was noted that he was divorced but had been dating a woman for the past 3 years. He described their relationship in positive terms. The appellant has 3 adult children, but stated that he did not have a close relationship with any of them. However, he reported 3 to 4 social friends. He denied a history suicide attempts, violence, or assaults. 

His actives and leisure pursuits included the American Legion, the Marine Corp League, documentaries, biographies and movies on television, and walking. He stated that he drank alcohol 2 times per week. 

On physical examination, the appellant was clean, neatly groomed, and appropriately and casually dressed. His psychomotor skills were unremarkable and his speech was unremarkable, spontaneous, clear and coherent. His attitude toward the examiner was attentive, his affect was normal, and his attention and orientation were intact. The Veteran described his mood as "ok." His thought process and content were unremarkable, he had average intelligence, understood the outcome of behavior, and understood that he had a problem. There were no delusions, hallucinations, inappropriate behavior, obsessive/ritualistic behavior, panic attacks, episodes of violence, or homicidal or suicidal thoughts. His extent of impulse was poor. He was able to maintain minimum personal hygiene and there were no problems with activities of daily living. The Veteran's remote, recent, and immediate memory was normal. 

PTSD symptoms included recurrent and distressing dreams, nightmares, anhedonia, avoidance, markedly diminished interest or participation in significant activities, feeling of detachment or estrangement from others, difficulty falling or staying asleep, outburst of anger, difficulty concentrating, and hypervigilance. 

Occupationally, the examiner determined that there was reduced reliability and productivity due to PTSD symptoms. A GAF score of 58 was assigned. 

VA treatment records dated from September 2010 to December 2011 reveal continued treatment for PTSD. In a September 2011 record, it was noted that the appellant had increased depression, which appeared to be due to his long-standing guilt over past parenting issues. The appellant reported that his nightmare activity had increased. He stated that his irritability had generally been reduced though he had been more isolated. He stated that his social contacts had been limited to veteran-based organizations. A GAF score of 49 was assigned. In a January 2011 record, the Veteran reported that his PTSD symptoms were exacerbated over the holidays due to exposure to more provocative stimuli (e.g. crowded situations). In records dated in October 2011, it was noted that the appellant was stable with heightened frustration. The Veteran stated that he remained highly reactive to crowded situations, and as a consequence, remained isolated, which extended to group therapy. He also reported that his emotional detachment was more profound as he felt more pressure in his current relationship. He had been able to engage in some medical recommended exercise at the local gym, but little else in the way or pleasurable endeavors. The records do not reveal any changes in functional status. 

VA treatment records from January 2012 to March 2013 reveal further VA psychiatric treatment with symptoms to include increased mood symptoms, emotional detachment, feelings of guilt related to past parenting and combat-related stressor, nightmares, being isolated, and sleep problems. A September 2012 record indicates that the Veteran received a DUI/revocation of his driver's license. As a result, he noted an increase in mood symptoms. A December 2012 record notes improved relationships with 2 of his children. With regard to his PTSD symptoms, he noted an increase in symptoms due to the approach of his combat anniversary. In a March 2013 record, the appellant reported increased depression related to a strained relationship from his significant other. A GAF score of 49 was assigned.

In a statement from the Veteran received in May 2014, the Veteran reported that he left work because he suffers from PTSD. 

In VA treatment records from May 2014 the Veteran reported depression for an extended period of time. A GAF score of 62 was assigned. Additionally, in a November 2014 VA treatment record, the Veteran reported that he had been having a lot of anxiety attacks. It was noted the he was starting to mend his relationship with his children since he had been in therapy and sober for 2 years after his DUI in 2012. He reported that his current bout of depression and anxiety started about 6 or 7 months ago. There were no complaints or evidence of any manic or psychotic symptoms. There were also no complaints of tearfulness, hopelessness, or hallucination. Appetite, sleep, and energy were all good. A GAF score of 55 was assigned.

The Veteran was provided a VA examination in November 2014. It was again noted that he had been divorced for the past 20 years and had 3 children who did not live in the local area. He mentioned that he did not have a relationship with his children. He stated that he assumed that his relationship with his grandchildren was good but stated that he did not see them often. He has 6 sisters and 2 brothers. He reported that he had a good relationship with 1 sister and had cordial relationships with his other siblings. He indicated that when he visited his sister, his other siblings would also visit. He had been in a relationship for the past 8 years and indicated that he was happy with her. He stated that there were 2 couples that he and his girlfriend interacted with on a regular basis. The Veteran noted that he attend PTSD group once per week and was comfortable with them, but did not interact with them outside the group. He stated that he generally got along with his neighbors and other people. He had 2 close friends, but they pasted away within the last 7 years. 

With regards to employment, the Veteran stated that he was last employed full-time in 1999 and worked part-time from 2001 to 2007. 

For activities, he reported that he stayed home and did nothing. He added that he went to the American Legion to play cards, but rarely left the house. He did not like crowds or being around people and preferred to go out late at night. He spent most of his time watching television, reading magazines, and using the computer to play games. He also helped with some of the chores to include cooking (grilling) and grocery shopping if his girlfriend needed. However, he stated that his girlfriend did most of the shopping. 

PTSD symptoms included depressed mood, anxiety, intrusive thoughts, negative beliefs, strong negative feelings, less interest in activities, irritability and anger, detachment or estrangement, avoidance, startle response, and chronic sleep impairment. 

On mental status examination, it was noted that the Veteran was clean and neatly groomed and was pleasant and cooperative with the interviewer. Orientation was intact, speech rate and tone were normal, attitude was cooperative, and thought content and progression were within normal limits. There was no difficulty in understanding complex commands or gross impairment in thought processes or communication. Hallucination, delusions, and grossly inappropriate behavior were not present. Attention, concentration, abstract reasoning, and memory were within normal limits. Fund knowledge was good, intelligence was average, and insight and judgment were fair. The appellant denied suicidal or homicidal ideation. 

The examiner noted that the Veteran's PTSD was mild and that his current presentation represented a durable improvement and that there was a good prognosis for continued improvement/stability of the current state of functioning. The examiner opined that prior GAF scores provided by the appellant's mental health providers were inapplicable to the examination because they were based predominantly on the Veteran's subjective report, without objective assessment of response style. The examiner determined that Veteran's PTSD symptoms caused social and occupational impairment with occasional decrease in work efficiency and intermittent periods of inability to perform occupational tasks, although generally functioning satisfactorily with normal routine behavior, self-care, and conversation. 

VA treatment records from December 2014 to April 2015 reveal additional psychiatric treatment with GAF scores of 55 and 61. Notably, in a March 2015 record, the appellant reported occasional problems with poor interest in doing things, feeling depressed, nightmares, poor sleep, lack of energy, overeating, feeling bad about him, poor concentration, feeling restless, and having passive thoughts of being better off dead. He denied any suicidal, homicidal, or violent ideations, intent, or plan. He stated that his son and sister were coming to visit. In an April 2015 record, the Veteran reported that he lived with his girlfriend and last worked in 1999. He stated that he quit due to his heart problems. He mentioned that he enjoyed eating out and watching sports. 

In a statement from the Veteran received in April 2015, he stated that during the November 2014 VA examination, he was required to answer a number of questions via computer as part of the examination. He became stressed while taking the examination because he wasn't sure about the questions. He reported that he did not routinely use computers and was not knowledgeable about them. He further stated the he gets stressed when he has to answer questions by computer. However, he looked at emails on his fiancé's computer at home and told her how to answer. She would edit and reword what he told her so that answers were phrased correctly. In sum, the appellant asserted that his answers on the computer test were adversely affected by his limited education, stress factors he experienced while sitting at the computer, and by his difficulty in comprehending written materials. 

In a statement from the Veteran's fiancé, also received in April 2015, she stated that she had experienced the Veteran's mood change frequently without a specific reason. He had moderate to severe depression and cried from time to time. She noted that the appellant isolated himself and became uncomfortable around people when they went out together. She had also observed the Veteran become angry and ignore his personal hygiene. Specifically, when he is depressed, he will go 3 or 4 days where he sits in front of the television and sleeps on the couch without bathing. Additionally, she stated that the Veteran had problems interacting with his family and had difficulty making decisions. Lastly, she mentioned that when the appellant was employed, he would appear to be fatigued and tired. She encouraged him to stop working because she feared for his mental health. 

Records from May 2015 to January 2016 demonstrate further psychiatric treatment for PTSD symptoms. In pertinent part, in a May 2015 record, the appellant reported that he was more irritable and arguing more with people, especially his girlfriend due to her interest in being married. He noted anger over not having his PTSD rating increased. He had passive thoughts that he would be better off dead when he thought about his medical problems, but adamantly denied any suicidal, homicidal, or violent ideations, intent, or plans. It was noted that he attended church weekly. There were no complaints or evidence of any manic or psychotic symptoms, tearfulness, hopelessness, or hallucinations. On mental status examination, the appellant was appropriately dressed and groomed, had good hygiene, and appeared his stated age. He was interactive, pleasant, cooperative, and had good eye contact. There were no abnormal movements. His speech was spontaneous, non-pressured and coherent. His thought process was logical and organized. His though content was determined to be appropriate and revealed no hallucinations, delusions, or paranoia. Cognition was grossly intact with good recall of recent events. A GAF score of 61 was assigned. In an April 2015 VA treatment record, it was noted that the Veteran had poor interest in doing things, sleep issues, lack of energy, appetite issues, and felt bad about himself. He reported 1 nightmare in the past 3 months. There were no complaints of tearfulness, hopelessness, irritably, or hallucinations. There was no change in mental status examination. A GAF score of 61 was assigned. In a December 2015 VA treatment record, the Veteran reported feeling stressed due to relationship issues, which caused him to start having bad dreams again. He noted that he and his girlfriend of 10 years argued over her request to get married. He reported that he was planning to visit his daughter during the holiday and was expecting his stress to increase until he returned. There were no complaints of tearfulness, hopelessness, or hallucinations. The Veteran denied any suicidal, homicidal, or violent intent, ideations, or plans. There was no change in mental status examination. A GAF score of 61 was assigned.

The Veteran was afforded a final VA examination in April 2016. It was noted that the appellant was married in February 2016 and had been with his wife for 11 years. He had 3 adult children. He reported cordial relationships with his 2 younger children and rarely saw his eldest son. His wife has children, but he rarely saw them. He described having a good relationship with his wife. Additionally, he has 1 brother and 6 sisters. He reported that he got along with 1 one sister better. With regard to friends, he indicated that he had two good friends, but both were deceased. He mentioned that he was cordial to people, but did not to get into conversations. He denied hobbies. His recreational activities included staying home, watching television, and playing solitaire on the computer.

The appellant reported that he last worked part time in 2007. He last worked full-time in 1999 due to stress.

As for a history of violence, the appellant stated that he did not get into a lot of fights but got into shouting matches. The last shouting match was 3 days prior to the examination with a store clerk. He stated that he stopped drinking in 2012. 

PTSD symptoms included distressing memories and dreams, avoidance, feelings of detachment, persistent negative emotional state, irritability, hypervigilance, exaggerated startle response, problems with concentration, sleep disturbances, depressed mood, anxiety, and disturbances of motivation and mood.

On mental status examination, the Veteran was clean, neatly groomed, and appropriately dressed. There were no abnormal or involuntary movements or overt psychomotor agitation or retardation. He maintained good eye contact and was oriented. His mood was pleasant, cooperative, and somewhat guarded. His affect was appropriate. Speech was spontaneous with average rate, volume and tone. Thought content was future oriented and thought process was linear, logical, and goal-directed. There was no evidence of visual or auditory hallucinations, delusions, or ideas of reference, based on behavior and self-report of the Veteran. Attention and concentration were within normal limits. Fund knowledge, language, insight, and judgment were good. Intelligence was average and abstract reasoning and memory were within normal limits. There was no overt hypervigliance. He denied suicidal or homicidal thoughts. 

With regard to functional assessment, the examiner noted that the appellant's attention was sufficient for interview and question responding, and he was able to maintain focus and resist distractions from environmental factors. The Veteran reported problems with concentration. Based upon his self-report, the Veteran's ability to sustain concentration to tasks persistent and paced was considered moderately impaired. He also described intrusive memories that impacted his concentration. 

The examiner noted that although the Veteran claimed memory impairment, as far as could be determined without independent verification of historical facts, he was able to reconstruct details of recent and remote past in an accurate fashion without the benefit of notes or prompts. Additionally, based upon the Veteran's self-report, his ability to retain instructions as well as sustain concentration to perform simple tasks was considered moderately impaired. His ability to interact in an appropriate manner with the general public was considered mildly to moderately impaired. The appellant reported that he could get into verbal arguments with the general public or store workers. The examiner determined that the ability to set realistic goals and make plans independently of others was considered unimpaired. The ability to sustain ordinary routine and the ability to ask simple questions or request assistance were also considered unimpaired. 

The Veteran's ability to respond appropriately to changes in the work setting was considered moderately impaired. He reported that when he was working "I pretty much just went along with the course...everything was basically the same every day, every day..." It was noted that the appellant had a daily routine: he gets up reads the paper, drinks coffee, and watches TV. He reported that he adapts to change. The examiner determined that the Veteran's ability to make simple work-related decisions is considered mildly impaired. He also opined that the Veteran was considered fully capable of managing funds in his own best interest. Further, based upon the Veteran's self-report his ability to respond appropriately to coworkers, supervisors, or the general public is considered moderately impaired.

The Veteran states he does not care about things and lacks interest which would impact his ability to perform job duties. He described feeling dispassionate about life. He stated that he had no problems with ADLs, such as feeding, grooming, bathing, walking, etc. He also denied problems with instrumental activities of daily living (IADLs), such as managing finances, shopping, handling transportation, managing medications and/or housework and basic home maintenance.

The Veteran reported past difficulties in occupational settings. The examiner determined that the Veteran's PTSD symptoms caused occupational impairment with deficiencies in most areas, such as work, school, family relations, judgment, thinking, and/or mood. 

SSA records reveal that the Veteran was not determined to be disability due to his psychiatric disabilities. Notwithstanding, benefits were awarded for degenerative disc disease of the back and for essential hypertension. 

Analysis

After a review of the evidence, the Board finds the Veteran's PTSD most nearly approximates the current 50 percent evaluation and assignment of the next-higher 70 percent rating is not warranted at any time during this stage of the appeal. In reaching this conclusion the Board observes that the Veteran's PTSD has been manifested by symptoms of intrusive thoughts, depressed mood, avoidance, feelings of detachment, nightmares, irritability, hypervigilance, exaggerated startle response, problems with concentration, sleep disturbances, anxiety, and disturbances of motivation and mood. Such symptoms are contemplated by the current 50 percent rating and reflective of occupational and social impairment with reduced reliability and productivity. See 38 C.F.R. § 4.130, Diagnostic Code 9411. 

In finding against the 70 percent rating, the Board finds that the evidence does not more nearly approximate that the Veteran's PTSD has resulted in occupational and social impairment with deficiencies in most areas. While not dispositive, the Board notes that the evidence fails to show that the Veteran suffered from frequent obsessive rituals, speech intermittent or illogic, obscure, or irrelevant. Further, while examined for the following, the competent medical evidence did not reveal delusions, near-continuous panic attacks, impaired impulse control, or impaired judgment. Although the Veteran reported poor hygiene during periods of depression, neglect of personal appearance and hygiene were not reported or documented in medical treatment records or on examination. The reports of poor hygiene, when considering against the totality of the pertinent evidence, are not of a severity or duration to more nearly approximate the next-higher rating. While the appellant reported thoughts of death, he denied suicidal or homicidal ideations or intent to hurt himself or others. The Board finds that the frequency of such report concerning thoughts of death were not recurring, as the seemed to have been present in the treatment records in 2009, near when the Veteran's father passed away. The evidence of record also fails to demonstrate spatial disorientation. Instead, the examination reports reflect that the Veteran was found to be oriented to time, person and place. 

The Board observes that the Veteran reported that he stopped working in 1999 due to his PTSD symptoms. However, in an April 2015 VA treatment record, he stated that he quit working due to his heart problems. Moreover, SSA benefits were awarded for a back disability and hypertension, not for a psychiatric disability. The Board finds that SSA's awarding of disability benefits on disorders, other than psychiatric, is persuasive evidence that his PTSD signs and symptoms were not of the severity to cause him from maintaining or securing gainful employment. The Board acknowledges that in a May 2009 private opinion and a June 2010 VA treatment record, it was determined that the appellant's PTSD symptoms prevented him from working. However, the opinions are not supported by a rationale. See Nieves-Rodriguez v. Peake, 22 Vet App 295 (2008). Additionally, there is no indication that the private physician reviewed the appellant's medical records prior to rendering his opinion. For these reasons, the Board finds these opinions lack weigh on the issue of occupational impairment. 

The Board also acknowledges the April 2016 VA examiner's finding that the Veteran determined that the Veteran's PTSD symptoms caused occupational impairment with deficiencies in most areas, such as work, school, family relations, judgment, thinking, and/or mood, however, such determination is not consistent the examination results. In this regard, examination findings revealed mild to moderate PTSD symptoms. The examiner determined that, based upon the Veteran's self-report, his ability to retain instructions as well as sustain concentration to perform simple tasks was moderately impaired. His ability to interact in an appropriate manner with the general public was considered mildly to moderately impaired. Further, the ability to set realistic goals and make plans independently of others was considered unimpaired. The ability to sustain ordinary routine and the ability to ask simple questions or request assistance were also considered unimpaired. Additionally, the examiner determined that the Veteran's ability to make simple work-related decisions is considered was mildly impaired. Further, based upon the Veteran's self-report his ability to respond appropriately to coworkers, supervisors, or the general public is considered moderately impaired. Thus, when viewing the 2016 examination report as a whole, to include the previous several statements, the Board finds that the overall tenor of the report is moderate social and occupational impairment. See Monzingo v. Shinseki, 26 Vet. App. 97, 107 (2012) (explaining that an examination report "must be read as a whole" to determine the examiner's rationale). As such, the conclusory statement in #4 is not support by the rest of the examiner's findings and statements; therefore, the Board finds this individual part of the 2016 examination report lacks weight.

Socially, the appellant was married in February 2016 and had been with his wife for 11 years. He described having a good relationship with his wife. He has 3 adult children and reported cordial relationships with his 2 younger children. Additionally, he has 1 brother and 6 sisters. He reported that he got along with 1 one sister better. Although he denied hobbies, he was part of the Marine Corp League and the American Legion, reported that he and his wife went on dates with other couples, and that he regularly attended church. Thus, while his documented and reported symptomatology is significant, such have been contemplated by the 
50 percent evaluation. At this time, the disability picture does not more closely approximate the next-higher 70 percent evaluation, as explained above.

The Board has also considered the GAF scores assigned during the appeal period. GAF scores ranged from 48-62, indicative of mild to serious symptoms. The Board notes that, while important, the GAF scores assigned in a case are not dispositive of the evaluation and must be considered in light of the actual symptoms of the Veteran's disorder. See 38 C.F.R. § 4.126(a). The Board has considered the actual symptoms and resulting impairment as set forth above, and concludes that the impairment caused by these signs and symptoms more nearly approximates a 
50 percent rating. 

The Board has considered the lay statements of record, to include those from the Veteran and his wife (April 2015), regarding the Veteran's PTSD symptoms and finds them competent and credible. However, when viewing against the totality of the evidence, the Board finds that these competent and credible lay statements are outweighed by the examination reports, VA treatment records, and private medical opinion, which demonstrates that the Veteran's social and occupational impairment most closely approximates the current 50 percent rating. The Board places greater weight on the objective findings of the specially trained clinicians who performed mental health examinations of the Veteran. The also acknowledges the Veteran's opinion and statement of record that the November 2014 VA examination is inadequate. However, as explained above, the medical evidence prior to and after the examination demonstrates symptomatology indicative of a 50 percent rating. The November 2014 examination falls relatively in the middle of the appeal period (with VA examinations and treatment reports coming before and after it). Even if this examination is complete disregarded, the Board analysis is that the overall medical and lay evidence reflects signs and symptoms consistent with the current 
50 percent evaluation.

In sum, the criteria for a 70 percent rating have not been shown at any time during the appeal period. See Fenderson v. West, 12 Vet. App. 119, 126 (1999); see also 38 C.F.R. § 3.344(a) ("Rating agencies will handle cases affected by change of medical findings or diagnosis, so as to produce the greatest degree of stability of disability evaluations consistent with the laws and Department of Veterans Affairs regulations."). Thus, the Board determines that the preponderance of the evidence is against the assignment of an initial evaluation in excess of 50 percent for the Veteran's PTSD. 38 C.F.R. § 4.7.

ORDER

Entitlement to a rating in excess of 50 percent for PTSD is denied.

____________________________________________
P. SORISIO
Veterans Law Judge, Board of Veterans' Appeals

Department of Veterans Affairs